JOSEPH McKIBBIN and Others v. GREAT NORTHERN RAILWAY COMPANY.

December 4, 1899.

Nos. 11,790—(98).

**Delivery of Sample Trunk.**

In an action to recover the value of a sample trunk and contents, consisting of merchandise, belonging to the plaintiffs, which they claim was delivered by one of their commercial travelers to the defendant, as a passenger, to be transported as his baggage on one of its passenger trains, *held*, that upon the evidence the question of the delivery of the trunk was one for the jury. '

### Transportation of Merchandise as Baggage of Salesman.

Also, assuming that the trunk had been delivered to the defendant, neither upon the admitted manner of doing business between the plaintiffs and defendant nor upon any general custom of which the courts can take judicial notice was there evidence sufficient to justify the court in holding that the defendant had undertaken to carry merchandise belonging to the plaintiff as the baggage of their traveling salesman.

### Same—Judicial Notice.

While courts will take judicial notice of the fact that it is the general custom of common carriers by railroad to carry sample trunks and their contents, consisting of merchandise, as the baggage of commercial travelers, which belong, not to the passenger, but to his employer, yet they will not take judicial notice of the conditions or limitations under which this is done.

Action in the district court for Ramsey county to recover $1,090 and interest, the value of a sample trunk alleged to have been lost by defendant's negligence. The case was tried before Brill, J., who directed a verdict in favor of plaintiffs for $1,109; and from an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*C. Wellington,* for appellant.

The liability of a carrier in respect to baggage is incident to the relation of carrier and passenger, and is personal to the passenger. Defendant is not liable to plaintiffs for damage to articles owned by them and carried by their salesman as his baggage. There being no contract between plaintiffs and defendant, they cannot maintain this action by virtue of any agreement contained in the tickets; nor by reason of the relation existing between them and Roeller, when knowledge of such relation was not brought home to defendant; nor because they were owners of the goods, unless knowledge of the ownership and of the fact that the goods were in the trunk was brought home to defendant, and such trunk accepted with such knowledge. Pennsylvania v. Knight, 58 N. J. L. 287; Stimson v. Connecticut, 98 Mass. 83; Alling v. Boston, 126 Mass. 121; Talcott v. Wabash, 66 Hun, 456; Missouri v. Liveright, 7 Kan. App. 772; Humphreys v. Perry, 148 U. S. 627; Blumantle v. Fitchburg, 127 Mass. 322; Cahill v. London, 10 C. P. (N. S.) 154; Haines v. Chicago,

St. P., M. & O. Ry. Co., 29 Minn. 160; Southern v. Clark, 52 Kan. 398; Toledo v. Dages, 57 Oh. St. 38. In the absence of active negligence or misfeasance on part of defendant, the action cannot be maintained as a common-law liability. Wunsch v. Northern Pac. R. Co., 62 Fed. 878; Meux v. Great Eastern (1895) 2 Q. B. 387.

The question of delivery should have been submitted to the jury. To constitute delivery it is not enough that the baggage be placed on the premises of the carrier. It must be delivered at the usual place of reception of such baggage, and the attention of the carrier must be called to the fact. Green v. Milwaukee, 41 Iowa, 410; Hickox v. Naugatuck, 31 Conn. 281; Camden v. Belknap, 21 Wend. 353; Rogers v. Long Island, 1 Thomp. & C. 396, 1 N. Y. Sup. Ct. 396; Grosvenor v. New York, 39 N. Y. 34.

*Bishop R. Schriber*, for respondents.

The liabilities of common carriers are independent of, though they may be modified by, contract. Hannibal Railroad v. Swift, 12 Wall. 262. A common carrier is an insurer of goods intrusted to him. Christenson v. American Ex. Co., 15 Minn. 208 (270). Under certain circumstances one may be entitled to the rights and protection of a passenger, though there be no consummated contract of carriage, the sole question being whether he in good faith intended to become a passenger. Cleveland v. New Jersey, 68 N. Y. 306; Lake Shore v. Foster, 104 Ind. 293; Green v. Milwaukee, 41 Iowa, 410; Hickox v. Naugatuck, 31 Conn. 281. If the carrier accept baggage for transportation, knowing that the owner does not intend to become a passenger, he accepts it to be carried as freight, and is liable as common carrier of goods. Hutchinson, Car. § 701; Sloman v. Great Western, 67 N. Y. 208. See Macrow v. Great Western, L. R. 6 Q. B. 612; Great Northern v. Shepherd, 8 Exch. 30; Smith v. Boston, 44 N. H. 325. Where an extra charge is collected for sample trunks by the carrier, knowing that they contain other than personal baggage, the transaction is tantamount to a shipment of freight, and the owner is the proper party to sue for loss. Perley v. New York, 65 N. Y. 374; Strouss v. Wabash, St. L. & P. Ry. Co., 17 Fed. 209; Collins v. Boston, 10 Cush. 506. See Pennsylvania v. Knight, 58 N. J. L. 287. Where a railroad com-

pany receives on a passenger train the property of a passenger, with notice that it is not baggage, the company is liable as common carrier of merchandise. Liability begins when the property passes with assent into its possession. Hannibal Railroad v. Swift, supra; Oakes v. Northern, 20 Ore. 392, 394; Great Northern v. Shepherd, supra; Macrow v. Great Western, supra; Cahill v. London, 13 C. B. (N. S.) 818; Chicago v. Conklin, 32 Kan. 55; Texas v. Capps, 16 Am. & E. R. R. Cas. (Tex.) 118; Hoeger v. Chicago, 63 Wis. 100; Sloman v. Great Western, supra; Perley v. New York, supra; Strouss v. Wabash, St. L. &. P. Ry. Co., supra; Butler v. Hudson, 3 E. D. Smith (N. Y.) 571; Collins v. Boston, supra; Minter v. Pacific, 41 Mo. 504; Toledo v. Dages, 57 Oh. St. 38; Haines v. Chicago, St. P., M. & O. Ry. Co., 29 Minn. 160.

The delivery was complete, being according to the usual and customary method at the station. Merriam v. Hartford, 20 Conn. 354; Grosvenor v. New York, 39 N. Y, 34; Illinois v. Smyser, 38 Ill. 354; Rogers v. Long Island, 1 Thomp. & C. 396.

MITCHELL, J.[1]

Plaintiffs brought this action 'to recover the value of a sample trunk and contents alleged to have been delivered to the defendant as a common carrier to be transported on one of its passenger trains as the baggage of one of their traveling salesmen, and lost through its negligence.

The following facts are admitted by the pleadings: That plaintiffs are a manufacturing and jobbing firm engaged in the business of manufacturing and selling at wholesale furs and other merchandise; that for more than five years they had been employing traveling salesmen, who were accustomed to travel over defendant's road for the purpose of selling plaintiffs' goods; that during that time it has been their custom to buy from defendant 1,000-mile tickets for the use of these salesmen, and to supply these salesmen with "sample trunks," filled with samples of their goods, for their use in making sales; that this custom was known to the defendant, and that during all that time it had been the custom of the defend-

[1] The case having been submitted before BROWN, J., took his seat, he took no part.

ant to permit these salesmen to carry these trunks, packed with this merchandise, on its regular passenger trains, and to check them as baggage, and carry them for the salesmen, to the weight of 150 pounds, gratuitously, in connection with the mileage ticket or passenger fare paid by each of the salesmen, and to charge additional compensation for all weight in excess of 150 pounds; and for the purpose of paying the "excess baggage" charges the plaintiffs have been accustomed to buy of the defendant what are known as "excess baggage tickets," which permitted the salesmen to carry these sample trunks and contents on passenger trains as excess baggage.

It also appears from the evidence that one of plaintiffs' salesmen, Roeller by name, was supplied by them with one of these 1,000-mile tickets and one of these "excess baggage" tickets. Whether these tickets were purchased from the defendant by the plaintiffs in person or by Roeller himself with money furnished by them does not distinctly appear, and is, as we think, immaterial. Suffice it to say that both tickets provided that they could be used only by Roeller, and did not state for whom, if any one, he was traveling.

Supplied with these tickets and four sample trunks filled with furs, the property of the plaintiffs, Roeller started out on one of his trips. Being at Wahpeton, and being about to go thence to Morris as a passenger on defendant's road, he sent the trunks, by an expressman, to defendant's passenger station, for the purpose of taking them with him as baggage on one of defendant's passenger trains. This was about 10 o'clock in the evening, and, consequently, after dark. The expressman unloaded them on the west end of the platform, as shown by the diagram of the station attached to the paper book. He looked for a truck to wheel them around to the south side of the platform, which would be next the track on which the train would come in, and in front of the station house, and opposite a bay window in which the station agent was at work. Not finding the truck, he went into the station, and inquired of the agent where it was. According to the expressman's statement, on being told by the agent that it must be somewhere around, he went out, and searched for it again, and, not finding it, returned to the station house, and so informed the agent, and told him "there were four trunks out there," and then went away. The testimony of the

agent is that the expressman told him that there were four trunks "on the side platform"; that he looked out of the window, and saw five trunks on the side (south) platform. There was considerable conflicting evidence as to what was the usual and proper place for the delivery of baggage to the defendant; that on part of the defendant tending to show that it was the south side of the platform, and that baggage was never delivered to or received by it on the west end; while that on part of the plaintiffs tended to prove that it was not infrequently delivered and received at the west end, where the expressman left the trunks in question.

Shortly after the trunks had been brought down to the station, Roeller arrived, and informed the station agent that he had four trunks there, which he wanted checked to Morris, and at the same time produced his "1,000-mile" and "excess-baggage" tickets. The agent having inquired as to the weight of the trunks, and being informed that it was 800 pounds, prepared the checks, and then he and Roeller went out to find the trunks, and, after looking around for them, finally found three of them where the expressman had left them, but the fourth one, containing about $1,000 worth of valuable furs, was missing. It was afterwards discovered that it had been stolen, and rifled of its contents. This is the trunk for which a recovery is sought in this action. There was no evidence that the station agent had any notice or knowledge to whom the trunks or contents belonged, or that they all belonged to the same person, or what the contents were, or that he ever saw any of the trunks, or that he had notice that Roeller was a commercial traveler, or that he was in the employment of the plaintiffs, at least until after Roeller came in person to the station, and requested to have the trunks checked, which was after the trunk was stolen. It appears from the evidence that the sale of these 1,000-mile and excess-baggage tickets by the defendant is not limited to commercial travelers, but that they are sold to and can be used by any one who may wish to buy them.

Upon this state of the evidence both parties requested a directed verdict in their favor. The court refused the request of the defendant, and granted that of the plaintiffs, and directed a verdict in their favor for the amount claimed. After verdict, the defendant moved

for judgment notwithstanding the verdict, or for a new trial, both of which the court refused to grant.

1. We are clearly of opinion that upon the evidence it was a question for the jury as to whether the lost trunk was delivered to the defendant; and for that reason, if no other, the court erred in directing a verdict.

2. The common-law rule is that, when a common carrier contracts, either expressly or impliedly, for the carriage of a passenger, the carriage of his reasonable and ordinary personal baggage is also undertaken as incidental to the principal contract, and as equally obligatory on the carrier. This undertaking only extends to such articles of personal convenience or necessity as are usually carried by passengers for their personal use, and not to merchandise or other valuables, although carried in the trunks of passengers, which are not designed for any such use, but for other purposes, such as a sale and the like. But it is equally true that it is competent for a carrier to contract to carry as the baggage of the passenger merchandise or other property which is not designed for the personal use of or property not belonging to, the passenger, and, if it does so, it will be liable for it as a common carrier; and if, as in the present case, the property does not belong to the passenger, the owner may, in case of its loss, maintain an action for its value. Such a contract may be either express or implied. It may be implied from the general custom of the carrier in its manner of conducting business with the public, or from a particular custom or manner of doing business with a particular person.

In the present case the custom or manner of doing business between the plaintiffs and the defendant alleged in the complaint does not go far enough to charge the defendant with liability. For example, it is not averred that it was the custom of the defendant to permit the transportation of plaintiffs' sample trunks as baggage on its trains without being informed or having knowledge that they belonged to the plaintiffs, or without being advised as to the character or value of their contents. In short, the custom pleaded does not cover all the facts of the case. The same would be true of any general custom of which courts would take judicial notice. It is a matter of general knowledge (except with some courts) that it is

the general custom of railroad companies to carry on their passenger trains, as the baggage of commercial travelers, trunks which, to the knowledge of the carrier, contain merchandise belonging not to the passenger but to his employer. Of this custom, to this extent, we would unhesitatingly take judicial notice. To hold otherwise would be to stultify ourselves. But we would not be justified in taking judicial notice of the conditions or limitations under which such trunks are thus received and transported as baggage. We are therefore of opinion that there was no evidence which justified the court in holding, as a matter of law, that the defendant undertook to carry as the baggage of Roeller merchandise belonging to the plaintiffs.

It appeared from the evidence that Roeller's "excess-baggage" ticket contained a stipulation upon his part that it was purchased by him upon his express declaration that the value of the baggage transported upon the same does not exceed $250. We are requested to determine the validity of this stipulation as a limitation upon the amount, if anything, which plaintiffs may recover. As this question was not litigated in the court below, and as the determination of it may depend on facts not before the court, we must decline to express any opinion upon it at this time.

We are satisfied that under the rule adopted in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W 958, this is not a case where judgment should be ordered for the defendant, but one which should be remanded for a new trial.

Order reversed, and a new trial granted.

CANTY, J.

I concur in that part of the foregoing opinion which holds that it was a question for the jury whether or not the trunks in question were ever delivered to the station agent, and therefore the trial court erred in ordering a verdict for plaintiffs. It was a question for the jury whether or not the minds of the expressman and the agent ever met on the proposition that the trunks were delivered to the railroad company, or that the expressman sufficiently identified the particular trunks so that the agent should have known which ones they were. I concur also in that part of the

opinion which holds that the court should take judicial notice of the general custom of railroad companies to carry on their passenger trains, as the baggage of commercial travelers, sample cases, which contain the merchandise of their employers, carried from place to place with the traveling man for the purpose of being used as samples in making sales by him for his employer. But I cannot concur in the proposition assumed in the opinion that we must presume that there are conditions or limitations attached to this custom which prevent it from having any effect as applied to this case. If the conditions and limitations referred to are a part of the general custom, we should take judicial notice of them also. If they are not a part of such general custom, but are restrictions placed on the general custom by the particular railroad company, then the burden was on it to plead and prove the particular limitation or condition so placed by it on the carrying of sample cases. The fact that the station agent did not know that the trunks presented were sample cases containing valuable samples is immaterial. It is enough that he knew that in the course of business such sample cases were likely to be presented by a traveling man at any time.