LEO CONHEIM v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1]

May 22, 1908.

Nos. 15,621—(49).

**Passenger's Baggage.**

When a trunk is delivered to the baggageman at a railway station in proper season, the passenger has the right to require that it shall be carried on the same train which he takes.

**Failure to Deliver—Damages.**

The proper measure of damages for the failure of a railway company to deliver a traveling man's trunk containing samples is the value of the use of the property during the delay, including such incidental expenses and damages as were in the contemplation of the parties when the contract for carriage was entered into.

**Evidence.**

The evidence in this case was too indefinite and speculative to form a basis for estimating the amount of the damages.

[1] Reported in 116 N. W. 581.

Action in the municipal court of St. Paul for breach of contract to recover $50, the value of lost time. The case was tried before Hanft, J., who ordered judgment in favor of plaintiff for $17.50. From an order denying its motion to amend the conclusions of law or for a new trial, defendant appealed. Reversed and a new trial granted.

*A. G. Briggs* and *Edward A. Knapp*, for appellant.

*Markham & Calmenson*, for respondent.

ELLIOTT, J.

The respondent, Conheim, a traveling salesman for a house dealing in men's wearing apparel, desiring to go from St. Paul to Rochester, Minnesota, purchased a ticket and checked his trunk containing samples necessary for use in his business. This trunk, of the kind and style usually carried by traveling salesmen, was delivered to the appellant's baggageman at the Union Station in St. Paul at 4:30 p. m. of December 5, 1906. Conheim was known to the baggageman, who had seen his samples and knew that he was a traveling man. When the trunk was checked, Conheim told the baggageman that it must be sent forward to Rochester, Minnesota, on the Chicago Great Western train which was to leave the station at 5:40 p. m. of that day. There was no other conversation between the parties. Conheim went to Rochester on that train, and did not learn until the next morning that the trunk had not accompanied him. It finally reached Rochester at 1:30 p. m. of that day, and in an action for damages Conheim claimed that, through the negligence of the railway company in failing to forward this trunk as directed, he lost one day's time, to his damage in the sum of $50. The trial court awarded him $17.50, and this appeal was taken from an order denying defendant's motion for a new trial.

Under the rule announced in McKibbin v. Great Northern Ry. Co., 78 Minn. 232, 80 N. W. 1052, and McKibbin v. Wisconsin Central Ry. Co., 100 Minn. 270, 110 N. W. 964, 8 L. R. A. (N. S.) 489, 117 Am. St. 689, the plaintiff established a cause of action for nominal damages, at least, against the railway company; but we regret to say that it is necessary to reverse the order because of the application of an erroneous rule for determining the damages and the indefinite and unsatisfactory nature of the evidence offered to prove damages.

When the agent of a railway company knows the nature of the

trunks and the character of the business of a traveling salesman, and is aware of the fact that the passenger cannot transact his business without using the contents of the trunk, and that it is necessary that the trunk shall accompany him, and nevertheless neglects to forward the trunk as directed, whereby the passenger is delayed in his business, the carrier is liable for the damages naturally resulting therefrom. Under such circumstances the passenger is entitled to have a trunk, which he delivers to the baggageman at the station in proper season, go forward on the same train which he takes. This action was brought on the theory that the plaintiff was entitled to recover the value of the time lost by him through the delay in forwarding his trunk according to directions. Assuming that the trunk was delivered to the station baggageman, and directions given, within a reasonable time before the departure of the train, the company was negligent, and plaintiff was entitled to recover the damages which he was able to prove resulted from such negligence. The action was brought on the theory that he could recover for the value of the time lost; but the respondent now practically concedes that the proper measure of damages in such a case is the value of the use of the property during the time of delay of delivery, including such incidental expenses and damages as were in the contemplation of the parties at the time the contract was entered into. Southern v. Coleman (Ala.) 44 South. 837; Texas v. Douglas (Tex. Civ. App.) 30 S. W. 487; Texas v. Russell (Tex. Civ. App.) 97 S. W. 1090; Elliott, Railroads (2d Ed.) § 1662a; Moore, Carriers, p. 730.

It was not pleaded, and there was no evidence to show, that the defendant's baggageman was notified that any special reason existed for expediting the delivery of this trunk. In a case very like this (Katz v. Cleveland, 46 Misc. 259, 91 N. Y. Supp. 720) the court said: "The reason given by plaintiff's principal witness why unusual damage resulted from the delay was that he needed the samples in order to fulfil engagements already made to meet prospective customers, and that he could not sell goods in the absence of his samples. He did not, however, give defendant any notice of these special circumstances. All he did was to notify defendant's baggageman that he had a large sample trunk which he wished checked. This certainly was not calculated to convey the intelligence that any special reason existed for expedit-

ing this trunk, which would not apply to any trunk. Upon the evidence as it stood the plaintiff should have been nonsuited." If Conheim had been able to prove that the baggageman was notified of the special reasons why it was important that this trunk should go with him on the next train, he might have recovered what he lost by not having the use of the samples. He spent the morning, after he learned that his trunk had not arrived, in calling on his customers in Rochester. In the afternoon, after the trunk had arrived, he showed them his samples, and it is not claimed that he lost any sales in Rochester. He does claim that if the trunk had been in Rochester in the forenoon, when he called for it, he could have finished his work and left there about three o'clock in the afternoon, and gone to Owatonna, where he intended to call upon other customers, and that because of the delay in Rochester he did not stop at Owatonna, but went on to Austin. He says that the loss for which he claims damage was "the subsequent loss of time from not having the samples at Rochester on that particular day." It does not appear that he had any regular customers at Owatonna, or that there was any reasonable probability that he would make any sales there. It was all left to conjecture.

The estimate of the value of his time was also very indefinite. He "figured that his time ran from $25 to $50 a day on the average," and sometimes more. He "estimated that his time ran not less than $25 per day, and from that up, while he was on the road." He testified that the only loss he sustained was by reason of the loss of the commissions he might have made; but it appeared that, while he was working on a commission basis, the firm paid him a stipulated sum every month, regardless of his earnings—that is, he received a fixed amount each month to cover his living expenses. It does not appear what this amount was, although it is conceded that it was paid for the day which he claims to have lost. Upon this state of the evidence it is impossible to estimate with any reasonable degree of accuracy what the value of the use of the property would have been during the time its delivery was withheld.

The order is therefore reversed, and a new trial granted.